RECEIVED CLERK

FEB 24 2011

U.S. DISTRICT COURT

UTAH LEGAL SERVICES, INC.
P. Alex McBean, #10390
205 North 400 West
Salt Lake City, Utah 84103
Phone: (801) 924-3373
Fax: (801) 328-8898
amcbean@utahlegalservices.org

Edward Tuddenham
1339 Kalmia Rd. NW
Washington, DC 20012
Phone: (202) 249-9499
Fax: (512) 532-7780
etudden@io.com

ATTORNEYS FOR PLAINTIFFS

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GERMAN WILMER SAENZ MENCIA, CIRO CAMAYO CANO<br><br>*Plaintiffs,*<br><br>v.<br><br>PHILLIP E. ALLRED, CHANCE ALLRED, DUSTIN ALLRED and PRESTON ALLRED, DBA ALLRED LAND & LIVESTOCK, WESTERN RANGE ASSOCIATION<br><br>*Defendants.* | COMPLAINT<br><br>Case: 2:11cv00200<br>Assigned To : Waddoups, Clark<br>Assign. Date : 2/24/2011<br>Description: Mencia et al v. Allred et al |

PRELIMINARY STATEMENT

1. Plaintiffs German Wilmer Saenz Mencia and Ciro Camayo Cano are Peruvians who came to work in Utah on visas Defendants procured for them.

1

2.  Upon their arrival in Utah, Plaintiffs were subjected to a continuing pattern of abusive, intimidating, and outrageous behavior. Defendants did not comply with the terms and conditions of work offered to Plaintiffs and failed to provide adequate food, living conditions and medical care.

3.  Plaintiffs bring this action to recover damages for injuries inflicted by Defendants for violations of the Fair Labor Stands Act (FLSA), 29 U.S.C. § 201 et seq., breach of contract, promissory estoppel, and intentional and negligent infliction of emotional distress.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C § 1337 (commerce), 29 U.S.C. § 216 (FLSA), and supplemental jurisdiction pursuant to 28 U.S.C § 1367 over Plaintiffs' related claims under Utah law.

5.  Venue is proper pursuant to 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Utah and many of the Defendants are residents of Utah.

## PARTIES

6.  Plaintiffs are citizens of Peru.

7.  Defendant Phillip E. Allred resides in Utah.

8.  Defendant Preston Allred resides in Utah.

9.  Defendant Chance Allred resides in Utah.

10. Defendant Dustin Allred resides in Utah.

11. At all times relevant to this action, Defendant Phillip E. Allred, Preston Allred, Dustin Allred and Chance Allred did business as Allred Land & Livestock, a corporation that, according to Utah Department of Commerce records, has been in expired status since February 23, 2006.

12. Western Range Association is a foreign non-profit organization.

## FACTS

13. The Allred Defendants operate a sheep ranch principally located is Sanpete County Utah.

14. Since at least 2006, the Allred Defendants have acquired a steady supply of H-2A workers from Peru to work on their ranch.

15. The H-2A program enables employers to import foreign workers to come to the U.S. to perform temporary agricultural work. 8 U.S.C. § 1188. In order to receive H-2A visas, an employer must obtain a certification from the U.S. Department of Labor (U.S. DOL) that no U.S. workers are available to perform the jobs and that the wages and working conditions offered to the foreign workers will not adversely affect similarly employed workers in the U.S. See generally Alfred L. Snapp & Sons, Inc. v. Puerto Rico ex rel. Barez, 458 U.S. 592, 594-596 (1982).

16. Regulations found at 20 C.F.R. § 655.100 et seq. govern the minimum contents of the job offers that must be made to both U.S. and temporary foreign workers.

17. In order to obtain an H-2A certification from DOL, an employer must submit a application/job offer to DOL. The regulations stipulate certain benefits that must be included in the job offer, including, but not limited to: (a) transportation and subsistence expenses to and from the worker's home; (b) the prevailing wage, the adverse effect wage rate or the legal federal

or state minimum wage rate, whichever is highest; and (c) coverage by workers' compensation insurance. 20 C.F.R. § 655.102.

18. As a part of the job offer for H-2A workers, employers must also attest that they will abide by the assurances in 20 C.F.R. § 655.104, including a promise to comply with applicable federal, state, and local employment-related laws and regulations.

19. Employers seeking foreign workers for sheepherder positions are subject to certain special procedures, 20 CFR § 655.93(b) and (c), set forth in U.S. DOL Field Memo 24-01 (Aug. 1, 2001).

20. Employers who hire H-2A workers to fill sheepherder positions pay a wage lower than that for other agricultural work, though such employers are required to provide food that is free of cost. Id.; 20 C.F.R. § 655.102(b)(9). In Utah, the minimum monthly wage for those engaged in the range production of livestock was $750 per month in 2009, while the minimum hourly wage for other agricultural workers on H-2A visas was $9.42 per hour in 2009.

21. The terms of work set forth in an employers H-2A job offer are incorporated by regulation and by operation of law into the contracts under which workers are employed. 29 C.F.R. § 501.10(d); 20 C.F.R. § 655.102(b)(14).

22. The Allred Defendants filed H-2A visa applications for sheepherders to work during 2009 and 2010.

23. Some of these H-2A applications were filed jointly with the Western Range Association, which acted as a joint employer of the sheepherders.

24. All of the H-2A applications filed by the Allred Defendants indicated that the job to be performed was sheepherding and offered work terms, including wages of $750/month, free housing, transportation and board, bi-weekly pay periods and worker compensation insurance.

25. The Allred Defendants' H-2A visa applications for 2009 and 2010 were approved by the United States government.

26. Pursuant to an approved visa application, the Allred Defendants contracted with Plaintiff Saenz to work on their ranch from April 2009 through February 2010.

27. Plaintiff Saenz traveled from Peru in April 2009 and began work immediately.

28. In early 2010, the Allred Defendants obtained an extension of Plaintiff Saenz's H-2A visa and contracted with him to work through the end of February 2011.

29. Pursuant to an approved visa application, the Allred Defendants and Western Range Association contracted with Plaintiff Ciro Camayo Cano to work on Allreds' ranch from March 2010 through February 2011.

30. Plaintiff Camayo began work on or about March 18, 2010.

31. During the time that Plaintiffs were employed on the Allred Defendants' ranch they worked ten to eighteen hours per day seven days a week. During lambing in particular Plaintiffs regularly worked eighteen hour days.

32. Plaintiff Saenz was never given a day off in over a year working for the Allred Defendants. Plaintiff Camayo did not receive days off either.

33. In addition to working long hours without adequate rest, the Allred Defendants engaged in a continuing pattern of abusive, intimidating, and outrageous behavior towards Plaintiffs throughout the time they were employed.

34. The Allred Defendants brought food to Plaintiffs only every 15-20 days and the food provided was grossly inadequate to maintain minimal health both in terms of quantity and quality. Plaintiffs were forced to ration their food supplies and beg for food from other workers whose supplies were equally low. Plaintiffs' requests for additional food were ignored by the Allred Defendants.

35. The Allred defendants controlled Plaintiffs' work schedules and breaks and often would only allow Plaintiffs to eat one meal a day.

36. Plaintiffs arrived from Peru with inadequate clothing and footwear for outdoor work in Utah. Plaintiff Camayo had only canvas shoes for his feet. Plaintiffs repeatedly asked the Allred defendants to provide them with proper boots and clothing. The Allred Defendants ignored Plaintiffs repeated requests for proper boots and clothing for weeks, insisting that they work in the clothing they had. Plaintiff Camayo worked for two weeks in the snow wearing only his canvas shoes which were wet and cold.

37. The housing provided to Plaintiffs did not meet the minimum standards required by the Department of Labor. Camayo's housing had no heat and the window would not close. Camayo was provided with only one blanket making it impossible to stay warm at night.

38. Neither Plaintiff was provided with running hot water.

39. The Allred Defendants refused to provide medical treatment for sheepherders who were sick or injured. In June 2009, Plaintiff Saenz gashed his arm deeply on a metal chute while working with lambs. Defendant Philip Allred saw the gash and laughed. The Allred Defendants required Plaintiff to keep working and did not take him to a doctor or provide any first aid. No first aid kits were available to Plaintiff Saenz and he had no access to medicine or medical

treatment. The gash was extremely painful for months and went untreated. Other sheepherders had their medical needs ignored as well.

40. Plaintiff Camayo had a tooth knocked out by a sheep and was told the Allreds would provide no treatment.

41. The Allred Defendants were verbally abusive to Plaintiffs and other workers, constantly calling them degrading names and screaming at them.

42. The Allred Defendants did not pay Plaintiffs bi-weekly as promised in the contract or on any other regular basis. Instead, Plaintiffs had to repeatedly ask the Allred Defendants for money owed to them so they could pay their debts and to provide for their families in Peru. Those requests were often ignored and had to be repeated again and again before the Allred Defendants would provide an "advance" on their wages.

43. The Allred Defendants did not provide Plaintiffs with written statements of their earnings.

44. The Allred's refusal to pay on a regular basis was particularly upsetting to Plaintiffs because they both had large debts in Peru for which their houses were collateral. Because of the Allreds failure to pay on a regular basis they lived in constant fear that they would be unable to make timely payments on their debts, leaving their families homeless.

45. The Defendants did not pay Plaintiffs all of the wages contractually due to them for the work they performed.

46. As a result of the above pattern of abusive and outrageous behavior by the Allred Defendants, Plaintiffs suffered physical illness, pain, and mental anguish. They lived in fear for

their health and safety and reasonably concluded that they could no longer endure working under such conditions.

47. The Allred Defendants actions constructively discharged Plaintiffs in breach of their work contracts.

48. On or about the end of April 2010, in order to escape from the Allred Defendants, Plaintiffs walked at night from their trailer overland to Delta, Utah and have not returned to the Allred ranch.

49. Allred Defendants directed Plaintiff Saenz to spend more than half of his time engaged in activities such as mowing lawns of the private residences of the Allred Defendants, cutting wood for the private residences of the Allred defendants, irrigating alfalfa, harvesting alfalfa, building corrals, building lambing sheds, and performing various tasks on the head quarters ranch. This work was not covered by Plaintiff Saenz H-2A contract.

50. Pursuant to DOL's H-2A regulations the work Saenz performed was H-2A agricultural work for which he was legally required to be paid a minimum of $9.42 per hour plus overtime.

51. During his employment Plaintiff Saenz was engaged in the production of goods for commerce and was entitled to the protections of the FLSA.

52. At all times relevant herein the Allred Defendants were an enterprise engaged in commerce subject to the requirements of the FLSA.

53. Saenz did not receive $9.42 per hour or the FLSA minimum wage each work week and he did not receive overtime premiums in work weeks in which he worked in excess of 40 hours per week.

54. Prior to coming to work for the Allreds, Plaintiff Saenz incurred various costs related to the arrangement of his H-2A visa.

55. The out-of-pocket expenses referenced in paragraph 54 were for the benefit of the employer and operated as de facto wage deductions from his first week's pay that further reduced his pay below the legal minimum wage.

FIRST CLAIM FOR RELIEF

(Fair Labor Standards Act Claim)

56. This claim arises under FLSA, 29 U.S.C. § 201 et seq., against Allred Defendants. The Allred Defendants failed to pay Plaintiff Saenz the required minimum and overtime wages for his work for which he is entitled to relief pursuant to 29 U.S.C. § 216(b).

SECOND CLAIM FOR RELIEF

(Breach of Contract Claim)

57. The Allred Defendants entered into an employment contract with Plaintiff Saenz.

58. The Allred Defendants and Defendant Western Range Association jointly entered into an employment contract with Ciro Camayo Cano.

59. Defendants breached their employment contracts with Plaintiffs by failing to comply with the terms and conditions of the contracts for which Plaintiffs are entitled to relief pursuant to the common law of contracts.

THIRD CLAIM FOR RELIEF

(Intentional Infliction of Emotional Distress Claim)

60. The Allred Defendants engaged in a course of conduct toward Plaintiffs

   (a) With the purpose of inflicting emotional distress; or

   (b) Where any reasonable person would have known that such would result; and

   (c) Their actions were of a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality.

61. As a result of the Allred Defendants wrongful actions and omissions, Plaintiffs have suffered severe emotional distress for which they are entitled to relief under the common law.

FOURTH CLAIM FOR RELIEF

(Promissory Estoppel Claim)

62. Defendants made promises to Plaintiffs about their work in the United States on the H-2A visa.

63. Defendants should have reasonably expected that their promises would induce action and/or forbearance by Plaintiffs.

64. Plaintiffs were induced to act and/or refrained from acting based on the promises made by Defendants.

65. Defendants broke their promises to Plaintiffs. As a result, Plaintiffs suffered injuries.

66. Injustice can only be avoided by the enforcement of Defendants' promises.

FIFTH CAUSE OF ACTION

(Quantum Meruit Claim)

67. Plaintiff Saenz performed valuable services for the Allred Defendants. The Allred Defendants directed Plaintiff Saenz to perform those services, accepted the benefit of those services and knew that Plaintiff expected compensation for those services.

68. Plaintiff Saenz is entitled to compensation in *quantum meruit* at the lawful minimum wage applicable to those services, $9.42/hour plus overtime.

DEMAND FOR JURY TRIAL

69. Plaintiffs demand a jury for all issues so triable.

PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court enter an order:

a) assuming jurisdiction of this case;

b) entering judgment against the Allred Defendants on Plaintiff Saenz' FLSA claim and awarding him his unpaid minimum and/or overtime wages and a like amount as liquidated damages;

c) entering judgment against the Allred Defendants and Defendant WRA on Plaintiffs' breach of contract claims and awarding Plaintiffs damages flowing from the breach;

d) entering judgment against the Allred Defendants on Plaintiffs' intentional or negligent infliction of emotional distress claim and awarding Plaintiffs compensatory and punitive damages;

e) entering judgment against the Allred Defendants on Plaintiff Saenz' quantum meruit claim and awarding him damages in quantum meruit.

f) awarding Plaintiffs costs;

g) awarding Plaintiffs reasonable attorney fees;

h) awarding Plaintiffs prejudgment and post-judgment interest; and

i) granting such other relief as this Court deems just and proper.

This 24th day of February, 2011.

                Respectfully Submitted,

                UTAH LEGAL SERVICES, INC.
                P. Alex McBean, #10390
                205 North 400 West
                Salt Lake City, Utah 84103
                Phone: (801) 924-3373
                Fax: (801) 328-8898
                amcbean@utahlegalservices.org

                Edward Tuddenham
                1339 Kalmia Rd. NW
                Washington, DC 20012
                Phone: (202) 249-9499
                Fax: (512) 532-7780
                etudden@io.com

                _/s/ P. Alex McBean_
                P. Alex McBean