IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GERMAN WILMER SAENZ MENCIA, an individual<br><br>Plaintiff,<br><br>v.<br><br>PHILLIP E. ALLRED, CHANCE ALLRED, DUSTIN ALLRED and PRESTON ALLRED, dba ALLRED LAND & LIVESTOCK<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:11-cv-00200<br><br>Judge Clark Waddoups |

## I.   INTRODUCTION

Before the court is Plaintiff German Wilmer Saenz Mencia's ("Saenz") Motion for Partial Summary Judgment (Dkt. No. 80), and Defendants' Phillip E. Allred, Chance Allred, Dustin Allred, and Preston Allred, dba Allred Land & Livestock's Motion for Summary Judgment (Dkt. No. 82) and Motion to Exclude Evidence of Economic Loss at Trial (Dkt. No. 85). The court held oral argument on both parties' motions on November 15, 2012 and took the motions under advisement. After carefully reviewing the parties' filings and relevant legal authorities, the court GRANTS Defendants' Motion for Summary Judgment, DENIES AS MOOT Defendants' Motion to Exclude Evidence of Economic Loss at Trial, and DENIES Saenz's Motion for Partial Summary Judgment.

## II.   BACKGROUND

Defendants operate a sheep ranch located in Sanpete County, Utah, under the name of Allred Land & Livestock. Saenz is an individual who is a citizen of Peru. He arrived in the United States on April 7, 2009 under an H-2A Temporary Agricultural Worker Visa with an expiration date of February 27, 2010 and entered into an employment contract with Allred Land & Livestock to work as a sheepherder from April 2009 through February 2010. Allred Land & Livestock paid for Saenz's airplane fare, provided him with housing and food during the time he was employed with them, and paid him at the rate of $750 per month, the "monthly Adverse Effect Wage Rate" applicable under the Department of Labor's "Special Procedures" relating to Sheepherders working under the H-2A Visa program.

Saenz renewed his employment contract with Defendants in March 2010 to work through the end of February 2011 under the same terms as the original contract and procured a visa extension valid until February 28, 2011. Saenz claims that Defendants directed him to spend more than half of his time engaged in non-exempt tasks under the Special Procedures that apply to and modify the general H-2A Visa requirements and that also therefore fell outside of his contract. Accordingly, he argues he should have been paid the Fair Labor Standards Act minimum wage for his work rather than the monthly Adverse Effect Wage Rate applicable under the Special Procedures for Sheepherders.

On May 2, 2010, Saenz absconded from his position with Allred Land & Livestock and subsequently filed a complaint against Defendants alleging the following: (1) a violation of the Fair Labor Standards Act, (2) breach of contract, (3) intentional infliction of emotional distress, (4) promissory estoppel, and (5) quantum meruit.

## III.     ANALYSIS

**A.     Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A 'material fact' is one which could have an impact on the outcome of the lawsuit, while a 'genuine issue' of such a material fact exists if a rational jury could find in favor of the non-moving party based on the evidence presented." *Chasteen v. UNISIA JECS Corp.*, 216 F.3d 1212, 1216 (10th Cir. 2000). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The court finds no genuine dispute of material fact that would preclude the court from entertaining summary judgment in this case. As analyzed below, the court finds that Defendants are entitled to summary judgment as a matter of law.

**B.     Estoppel**

Estoppel exists to prevent a party from taking a legal position inconsistent with an earlier statement or action that places his adversary at a disadvantage. *See Kowalczyk v. I.N.S.*, 245 F.3d 1143, 1149 (10th Cir. 2001); *see also* Dan B. Dobbs, Handbook on the Law of Remedies 84-86, 89-90 (2d ed. 1993). It "arises when one party, by its words or actions, misrepresents a fact, and the other party reasonably relies upon such representations to its detriment." *United Serv. Auto. Ass'n v. Royal-Globe Ins. Co.*, 511 F.2d 1094, 1097 (10th Cir. 1975) (citations omitted); *see also Yates v. American Republics Corp.*, 163 F.2d 178, 180 (10th Cir. 1947).

The applicability of estoppel principles in the context of Fair Labor Standards Act ("FLSA") claims is an issue of first impression in the Tenth Circuit.[1]  The Fifth, Ninth, and Sixth Circuits have directly addressed the issue, holding that they are applicable in the context of claims for uncompensated overtime hours under the FLSA. *See Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir. 1972) (affirming directed verdict on FLSA claim on the basis that employee "was estopped and could not profit from her own wrong in furnishing false data to the employer"); *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413 (9th Cir. 1981) (holding that "where the acts of an employee prevent an employer from acquiring knowledge, here of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work in violation of [the FLSA]"); *White Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012) (noting that estoppel can apply under FLSA unpaid overtime claims if an employee's failure to comply with reasonable time reporting procedures "prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA").[2]

Both Colorado and Kansas District Courts have also recognized, in the context of claimed deficiency in overtime compensation under the FLSA, that estoppel "applies to bar an employee's claim for unpaid wages when the employer had no knowledge that the employee was not accurately reporting hours worked." *See Schneider v. Landvest Corp.*, No. 03-cv-02474-WYD-PAC, 2006 U.S. Dist. LEXIS 17230, *84 (D. Colo. Feb. 9, 2006) (holding, however, that estoppel was not available in that case despite the rule articulated because the employer had knowledge that plaintiff was working additional hours that were not being

---

[1] *But see McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1130 (10th Cir. 1998) ("Such failure to record claimed time is fatal to a later claim for such, if the company has no reason to be aware of the overtime.").

[2] By contrast, the Second Circuit has held that estoppel is not available as a defense to an FLSA claim despite "acts by an employee leading the employer to believe he is satisfied with the payments being made to him." *See Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 946; s*ee also Morrison v. Exec. Aircraft Refinishing Inc.*, 434 F. Supp. 2d 1314, 1320- (S.D. Fla. 2005).

reported); *see also Abel v. Department of Corrections*, No. 93-4070-SAC, 1995 U.S. Dist. LEXIS 13565, *17 (D. Kansas July 26, 1995) (same). The applicability of estoppel in FLSA cases focusing on claims for unpaid overtime is easily analogous to the present FLSA claims relating to compensation under the Special Procedures applicable to Sheepherders working under the H-2A Visa program. Accordingly, the court is persuaded that the reasoning behind the holdings that estoppel principles apply in the FLSA context, much as in other areas of the law, is equally applicable here.

Saenz performed work for Allred Land & Livestock that he now claims exceeded the scope of his contract and fell outside the job description set by the Department of Labor's Special Procedures for Sheepherders under the H-2A program. However, there is no evidence in the record that Saenz ever made any such objections to Defendants about the work he was being directed to perform. In fact, when asked whether he ever told Mr. Allred, Mountain Plains Agricultural Service, or anybody else that he would like to move to another ranch and get another shepherding job, his response was that he had not done so. (Def. Mot. Sum. J., Ex. 5, at 34, Dkt. No. 83.) On the contrary, after having worked for approximately eleven months, Saenz renewed his employment contract—which listed the occupation as Sheepherder and contained the same job description and pay rate as the original contract—to continue working for Defendants for an additional year.

Saenz's failure to object to the work he alleges was outside of his contractual terms and non-exempt under the Special Procedures, together with his renewal of the contract constitute actions detrimentally relied on by Defendants under generally applicable principles of estoppel. This reliance deprived Defendants of the opportunity to mitigate any possible damages by either addressing Saenz's alleged grievances, including modifying or removing any actually non-exempt

tasks, transferring Saenz to a different employer, paying him on an hourly basis, or terminating Saenz's employment. More importantly, because the Special Procedures (discussed below) exempt employers from the recording and reporting of hours worked, Defendants' reliance on Saenz's own reporting and representations prevented them from knowing or having the ability to know that Saenz was supposedly working too many hours on non-exempt work, much as in the uncompensated overtime cases in which estoppel has been applied in the FLSA context discussed above. The court therefore concludes that Saenz is precluded from asserting his claims against Defendants under general principles of estoppel.

**C.     Fair Labor Standards Act Exemption**

In the alternative, the court finds that Saenz's work falls within the FLSA exemption for employees "principally engaged in the range production of livestock." 29 U.S.C. § 213(a)(6)(E) (2012). For this exemption to apply an employee must (1) "be engaged in agriculture," (2) "be principally engaged," (3) "[o]n the range," and (4) "in the production of livestock." 29 C.F.R. § 780.324(a) (2014) (internal quotation marks omitted). "[A]n employee who spends more than 50 percent of his time during the year on the range in the duties designated as range production duties would be exempt. This is true even though the employee may perform some activities not directly related to the range production of livestock." 29 C.F.R. § 780.325(b) (2014).[3]

Saenz concedes that there is no material dispute as to the jobs he performed or where he physically performed them. (Pl.'s Reply, 14, Dkt. No. 91.) Although the parties disagree whether "range" includes land beyond the headquarters building and if so, how much land is included, the court finds it unnecessary to make that determination because Saenz's own admissions establish that he spent more than fifty percent of his work on exempt duties.

---

[3] Saenz contends that Defendants did not plead any exemptions to the FLSA, and that they have therefore waived them; however, the court notes that Defendants' Answer does raise the FLSA exemption for employees principally engaged in the range production of livestock. (Ans., ¶¶ 24, 26-28, 31-32, 38, 53, Dkt. No. 24.)

Defendants' First Set of Interrogatories ask Saenz to state all the work that he argues falls outside the scope of his Special Procedures H-2A sheepherding contract and to indicate the dates and hours spent to complete that work. (Def. Mem. Supp. Mot. Sum. J., Ex. 19, Dkt. No. 83-19.) Saenz was employed by Defendants for approximately thirteen months. He does not list any non-exempt work for the months of April, May, and June 2009 or for April and May 2010. The majority of the work conducted in an additional four months (July, October 2009; February, March 2010) was exempt, with the non-exempt work listed amounting to approximately seven days out of every month. Because Saenz does not argue that he only conducted non-exempt work in the remaining months (August, September, November, December 2009; January 2010), the non-exempt work he does list is insufficient to amount to more than fifty percent.[4] As a result, the court concludes that Saenz is exempt under the FLSA.

## IV.   CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' Motion for Summary Judgment, (Dkt. No. 82), DENIES AS MOOT Defendants' Motion to Exclude Evidence of Economic Loss at Trial (Dkt. No. 85), and DENIES Saenz's Motion for Partial Summary Judgment (Dkt. No. 80).

SO ORDERED this 4th day of March, 2014.

BY THE COURT:

_/s/ Clark Waddoups_
Clark Waddoups
United States District Court Judge

---

[4] Even if the days spent on non-exempt work were prorated, crediting 100% non-exempt work for the remaining five months in which he did non-exempt work, more than 60% of the days worked is admitted to have been spent doing exempt work.