# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GERMAN WILMER SAENZ MENCIA,<br><br>     Plaintiff,<br><br>v.<br><br>PHILLIP E. ALLRED, CHANCE ALLRED, DUSTIN ALLRED and PRESTON ALLRED, dba ALLRED LAND & LIVESTOCK,<br><br>     Defendants. | **MEMORANDUM DECISION AND ORDER AWARDING ATTORNEY FEES**<br><br>Case No. 2:11-cv-200<br><br>Judge Clark Waddoups |

Before the court is the motion of Plaintiff German Wilmer Saenz Mencia for an award of attorneys' fees and costs pursuant to 28 U.S.C. § 216(b) and Fed. R. Civ. P. 54(d). (ECF No. 202.) The motion is supported by the Affidavit of Edward Tuddenham with attached exhibits (ECF No. 202-1), the Affidavit of Jaqualin Friend Peterson with attached exhibits (ECF No. 202-3), the Affidavit of Derek Langton (ECT No. 202-3), and for comparison purposes the Affidavit of Judith D. Wolferts regarding time billed to Defendants between February 3, 2011 and November 6, 2013. (ECF Nos. 115 & 115-1). The Plaintiff prevailed on both his FLSA and breach of contract claims, and the Tenth Circuit has already determined that "[p]ursuant to 29 U.S.C. § 216(b), Plaintiff is awarded his appeal-related attorneys' fees" subject to a determination that the amount was reasonably and necessarily incurred. *Mencia v. Allred*, No. 14-4047 (Order of January 21, 2016). The issue now before the court is the reasonableness of the amount of attorney fees and costs requested. Defendants oppose the motion, arguing that the requested amount should be significantly reduced. (ECF No. 210.) Plaintiff requests attorneys' fees of $215,802 and costs and expenses of $1,996.09. (ECF No. 202.)

# I.     STANDARD FOR DETERMINING APPROPRIATE FEE AWARD

A plaintiff who prevails on a claim under the FLSA is entitled to any judgment awarded in the action plus "a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). *See Nesbitt v. FCNH, Inc.*, 811 F.3d 371, 380 (10th Cir. 2016) ("[I]t is undisputed that the FLSA . . . requires a district court to award 'a reasonable attorney's fee . . . and costs of the action' to a successful plaintiff.")  "A request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The district court, however, must determine whether the fee requested in light of the success achieved is "reasonable." *Id.* at 433, 437. The beginning point in determining the reasonableness of a request for attorney fees is the lodestar amount, calculated by multiplying the hours spent times a reasonable hourly rate. *Id.* at 433. The lodestar amount must be supported by detail supporting the rates claimed and specifying the dates, tasks accomplished, and the time spent on the various tasks. *Id.* The descriptions must be sufficiently detailed to allow the court to determine that the task was reasonably related and necessary to pursue the claim. *Id.*

There is a presumption that the lodestar amount is a reasonable fee, and the court should deviate only in "'exceptional' cases." *Id.* (quoting *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 552 (2010)). The court should not "mechanically adjust the lodestar figure downward based on the amount involved and the results obtained." *Bywaters v. United States*, 684 F.3d 1295, 1296 (Fed. Cir. 2012) (citation, quotation marks, and brackets omitted). Nevertheless, the court is required to carefully evaluate the reasonableness of the fee requested in light of the success achieved and the necessity of the time spent. In *Hensley*, the Supreme Court gave the following guidance:

> There is no precise rule or formula for making these
> determinations. The district court may attempt to identify specific

> hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment. This discretion, however, must be exercised in light of the considerations we have identified.

461 U.S. at 436–37. These considerations include the skill and experience of the lawyers and whether there has been a good-faith effort to exclude hours that are excessive, redundant, or otherwise unnecessary. *Id.* at 434. The court should also consider whether the billing attorneys have exercised "billing judgment." *Id.* "Work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved." *Id.* at 435 (internal quotations omitted). *Id.* Nevertheless, a fee should not mechanically be reduced simply because a plaintiff did not prevail on "every contention raised in the lawsuit." *Id.* at 434–35. Where plaintiff's claims involve "a common core of facts" or are "based on related legal theories" such that counsel's time cannot be divided on a claim-by-claim basis, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435.

A. **Billing Rates**

Setting a rate of compensation is within the discretion of the district court, accomplished by assessing the local market rates charged by "lawyers of comparable skill and experience practicing in the area in which the litigation occurs." *Case v. Unified School Dist. No. 233, Johnson County, Kan.*, 157 F.3d 1243, 1256 (10th Cir. 1998).   Plaintiff's attorneys fees request is supported by the affidavits and contemporaneous time and cost records of attorney Edward Tuddenham and attorney Jaqualin Friend Peterson and her firm of Peck Peterson LLC.  Mr. Tuddenham is located in New York City and is licensed to practice in New York, Texas, and the District of Columbia. (Tuddenham Aff. 2, ECF No. 202-1.) He has thirty eight years of

experience with the laws and regulations governing the Department of Labor's temporary guestworker programs. He has handled Fair Labor Standards Act claims and breach of contract claims, civil claims arising under the federal H-2 temporary guestworker program, plaintiffs' employment and civil rights litigation primarily on behalf of low wage workers, and since 1989, has spent the majority of his time litigating cases arising under the H-2A and H-2B programs. (*Id.*) He has litigated dozens of "damage actions on behalf of foreign and U.S. workers affected by the H visa programs, including many cases asserting the FLSA rights of such workers." (*Id.* at 3.) He has been involved in "numerous Administrative Procedure Act challenges to federal regulations governing the H-2 visa programs." (*Id.* at 4.) Thirty-two of his FLSA cases have published decisions and thirty-eight of his H-2, H-2A and H-2B cases have published decisions. (*Id.* at Exs. A, B.) He has "testified before Congress on guestworker matters, conducted numerous trainings on H-2 related issues, and published several articles regarding the H-2 program." (*Id.* at 5.) Because of the specialized nature of this work, Mr. Tuddenham "frequently consult[s] with and co-counsel[s] with attorneys around the country when guestworker issues arise." (*Id.* at 5-6.)

Mr. Tuddenham became involved in this action at the request of Alex McBean, an attorney with Utah Legal Services who was considering bringing suit on behalf of Mr. Saenz. (*Id.* at 6.) The case involved issues of first impression in the Tenth Circuit (and elsewhere) regarding the interplay of the H-2A Sheepherder program and the FLSA program and the proper application of the FLSA range production of livestock exemption.  In Mr. Tuddenham's experience, there are very few practitioners familiar with H-2A matters and experience litigating on behalf of foreign visa workers. The only other case in Utah to his knowledge was one that he

worked on with Mr. McBean shortly before this case was filed, an interpleader action filed by an employer, that settled almost immediately after filing. (*Id.*)

Given the scarcity of knowledgeable H-2 litigators and the legal issues raised by Mr. Saenz's case, the court finds it was reasonable for Mr. McBean to seek Mr. Tuddenham's expertise and that his expertise materially contributed to its ultimately successful outcome. After Mr. McBean withdrew as counsel for Mr. Saenz upon the court's entry of summary judgment in defendants' favor, Mr. Tuddenham agreed to continue to represent Mr. Saenz on appeal with Jacqualin Peterson as local counsel. (*Id.* at 7.) Mr. Tuddenham's normal billing rate in New York City is $625 per hour, which he has been awarded in H-2 matters outside of New York City based on the recognition that his expertise in H-2 law is not available in most jurisdictions and is vital to successful prosecution of foreign visa worker cases. (*Id.* at 9.) Here, Mr. Tuddenham seeks fees at a rate of $450 per hour commensurate with his years of litigation experience, expertise in the specific area of law at issue and in appellate work, and compatibility with local billing rates. (*Id.*)

Support for Mr. Tuddenham's requested billing rate is provided by the Affidavit of Derek Langton. (ECF No. 202-3.) Mr. Langton is a shareholder locally at the law firm of Parsons Behle & Latimer. (*Id.* at 2.) He has been a civil litigator for thirty-three years and has tried cases in both federal and state courts including cases involving employment, contracts, and complex commercial matters, among other areas. (*Id.*) He is the past chairperson of the Labor and Employment Law Section of the Utah State Bar, and is familiar with the prevailing market rates for attorneys involved in federal litigation. (*Id.*) Mr. Langton's current hourly rate is $420 per hour. The billing rates of colleagues at his firm with similar years of experience as Mr. Tuddenham are in the range of $420/hour to $470/hour depending on their particular practice

areas and other factors. (*Id.*) He opines that based on Mr. Tuddenham's years of experience and a review of his expertise, reputation, and background, Mr. Tuddenham's request of $450 per hour falls within the general range of his own rate and those of similarly situated local attorneys. (*Id.* at 3-4.)

Defendants provide an opposing view in the Affidavit of Stanley J. Preston. (ECF No. 210-8.) Mr. Preston currently owns the law firm Preston & Scott, LLC and previously worked for twenty-seven years at Snow, Christensen & Martineau and for three years at Latham & Watkins in California. (*Id.* at 2.) He has practiced law for thirty-seven years and has extensive litigation and trial experience in both state and federal courts involving a wide variety of claims including employment litigation and complex commercial litigation. He is also an experienced appellate attorney and has a number of reported cases. He is familiar with the prevailing market rates in Utah for attorneys involved in federal litigation. (*Id.* at 2-3.) Mr. Preston's current hourly rate is $350 per hour for complex commercial business litigation and $300 per hour for "employment related lawsuits such as Title VII, ADA, ADEA, and FLSA lawsuits." (*Id.* at 3.) He opines that Mr. Tuddenham's requested hourly rate of $450 is "significantly higher than the usual range that would be charged in Utah for this type of case." (*Id.*) His basis for so stating is his "discussion with Ms. Wolferts," as to the issues raised, the results obtained, and the work required to resolve the case, from which he concludes that there are no unique or complex legal issues in this case to warrant a higher rate, where the "case consists of a basic, single-plaintiff FLSA claim and a claim for intentional infliction of emotional distress." (*Id.* at 3-4.) Defendants argue that Mr. Tuddenham's hourly rate should be reduced to $300, if not lower because "the vast amount of time he spent in performing tasks that could and should have been assigned to a junior attorney." (Def.'s Opp. 10, ECF No. 210.)

The court gives no weight to either Mr. Langston's or Mr. Preston's evaluation of the complexity of this case, as there is no evidence that either of them independently reviewed the case or the issues involved. Mr. Langston, however, reviewed Mr. Tuddenham's qualifications, expertise, and reputation, while there is no evidence that Mr. Preston did so. While the court is not persuaded that all of the legal work involved in this case required Mr. Tuddenham's extensive expertise in H-2 visa programs for temporary guestworkers, the critical questions did, and it is the court's view that overall Mr. Tuddenham's subject matter, appellate, and litigation experience streamlined plaintiff's case and was highly influential in Mr. Saenz's ultimate success.

Based on the court's own familiarity with the prevailing market rates for legal work in this community, the reputation and lengthy legal experience of Mr. Tuddenham, and most importantly the specialized expertise of Mr. Tuddenham in litigating and appealing the types of issues raised in this matter—to which the court finds that defendants give inadequate weight— the court concludes that $450 is an appropriate hourly rate for Mr. Tuddenham. Within the local community, this rate currently falls within the range of the most experienced and highly qualified attorneys litigating civil matters in federal court, but it appears that Mr. Tuddenham's qualifications and experience justify his rate within that range.

Ms. Peterson has twelve years of experience as a civil litigator. (Peterson Aff. 2, ECF No. 202-2.) She has handled commercial transactional and litigation matters in both state court and in federal bankruptcy court as well as transactional, litigation, corporate, and compliance matters for telecommunications carriers and users before the Federal Communications Commission and all 50 state public utility commissions. (*Id.*) She has contributed to over fifty legal encyclopedias, texts and treatises on topics including labor and employment law, litigation and

federal courts, among other areas. (*Id.* at 2-3.) She has been exclusively practicing plaintiff's employment and civil rights law at her current law firm since 2010. (*Id.* at 3.) Much of her practice has involved "less common employment issues in the areas of discrimination and retaliation, and denial of other civil rights," and she frequently acts as co-counsel to both local and national firms in plaintiff employment litigation cases and trial work in both state and federal courts to assist other attorneys with matters falling within her litigation experience, including appellate work in state and federal courts. (*Id.* at 3-4.) She has previously served as the Chair of the Labor and Employment Section of the Utah Bar and the Vice President of the Utah Employment Lawyer's Association."  (*Id.* at 4.)

Mr. McBean asked Ms. Peterson to take over as local counsel when he determined that, as an attorney with Utah Legal Services, he would have to withdraw and refer appellate matters to outside counsel. (*Id.*) She agreed to take over the matter "despite my limited experience with FLSA/minimum wage cases in large part because Mr. Tuddenham was willing to continue to remain actively involved in the case and provide his extensive experience as an expert litigating cases arising under the FLSA and H-2A temporary guestworker programs on behalf of foreign visa workers."  (*Id.* at 4-5.) Given her Utah employment litigation experience, she believed she would be effective local counsel to address matters arising on remand, including trial, provided she had the assistance of Mr. Tuddenham's subject matter expertise. (*Id.* at 5.) Ms. Peterson seeks fees at a rate of $250 per hour commensurate with her years of experience, expertise in employment litigation, and local billing rates.  (*Id.* at 7.)  Defendants assert that Ms. Peterson's rate should be reduced to $225 because of the length she has been practicing and the fact that Mr. Tuddenham "mentored" her. (Def.'s Opp. 10, ECF No. 210.) The court finds this argument unpersuasive.

In addition, two attorneys at Ms. Peterson's firm also billed time in this matter. Elizabeth Peck has been practicing employment law for twenty five years and is the founding partner of Peck Peterson. She has practiced in both state and federal court, in Utah and California, in litigation and appellate matters. She similarly practices in "less common employment issues in the areas of discrimination and retaliation, and denial of other civil rights," and bills at an hourly rate of $300. (Peterson Aff. 8, ECF No. 202-2.) She billed 4.4 hours in this matter. Defendants assert that her rate should be no more than $225 per hour "because she did nothing substantive at all." (Def.'s Opp. 10, ECF No. 210.) Mr. Alex G. Peterson graduated from law school in 1992 and had twenty one years of experience as a Judge Advocate General in a number of capacities, including as trial counsel. He then obtained a Masters of Law. He bills at a rate of $220 per hour and is the only Spanish speaking attorney at Peck Peterson. (Peterson Aff. 8, ECF No. 202-2.) He billed 6.1 hours in this matter. Defendants assert that his billing rate should be no more than $75 per hour "since all he did was act as an interpreter/translator." (Def.'s Opp. 10, ECF No. 210.)

The court is not persuaded by defendants' objections to the hourly rates of Ms. Peterson and the attorneys in her firm. The rates requested are consistent with prevailing market rates for attorneys of similar skill and experience in the local community. Defendants offer no evidence otherwise, and their objections to Ms. Peck and Mr. Peterson's rates are based on the nature of the work performed, rather than on the skill and experience of the attorneys themselves. The court concludes that Ms. Peterson's rate of $250 per hour, Ms. Peck's rate of $300 per hour, and Mr. Peterson's rate of $220 per hour are appropriate rates of compensation.

B. **Reasonable Hours**

Mr. Tuddenham seeks reimbursement for 340.7 hours, while attorney Peterson and her firm seek compensation for 249.8 hours. (Pl.'s Brief 2, ECF No. 202.) The time spent on plaintiff's FLSA and breach of contract claims have not been segregated because the breach of contract claim is so closely intertwined with the FLSA claim that doing so would not be feasible. The claims both depended on the same common core of facts, i.e. what work Mr. Saenz performed, where he performed it, and the time expended in each of his tasks.  The legal question raised by the two claims as to whether Mr. Saenz was a sheepherder or a ranch hand overlapped, and the primary difference between the claims was the hourly wage rate mandated by the FLSA versus the contract claim once the Tenth Circuit concluded that Mr. Saenz was an FLSA ranch hand. Because the parties largely did not dispute the respective wage rates, the bulk of attorney time was expended on resolving the issues common to both of these claims. Defendants do not dispute this.

Instead, defendants raise over three dozen objections to the amount of fees and costs requested, which they ultimately narrowed down into twelve categories. (Def.'s Supp., ECF No. 221.) Because the categories overlap, the court further narrows them into six general objections: (1) Time that was excessive or not reasonably expended, (2) Time associated with a dismissed plaintiff, (3) Time spent on motions and/or claims on which plaintiff failed or which were never filed, (4) Time spent on appeal related to Amici, (5) Time associated with vague entries, secretarial or administrative tasks, or to correct lawyers' errors, and (6) Costs objections.  The court begins with Mr. Tuddenham's pre-appeal time.

1. *Attorney Tuddenham's Pre-Appeal Time Records*

Defendants object to Mr. Tuddenham's time in two categories:  Time spent prior to

plaintiff's appeal and time spent during and after the appeal.  It is clear from a review of the time records that there is no duplicate attorney time requested prior to plaintiff's appeal. As previously stated, from approximately November 2010 through April 2014, plaintiff was represented by Alex McBean of Utah Legal Services, who has not sought fees. Mr. McBean contacted Mr. Tuddenham  to assist with the case because of his experience and expertise litigating matters involving foreign visa farmworkers. (Tuddenham Aff., ECF No. 202-1.) Mr. McBean handled the discovery phase of the case with assistance from Mr. Tuddenham. Mr. Tuddenham handled the legal arguments regarding the sanction motion defendants filed after discovery was completed and the legal arguments with respect to summary judgment. (*Id.*) Of the 137.8 hours Mr. Tuddenham seeks during that time period, defendants argue first that at a minimum, his hours should be reduced by 45% even though they admit that because Mr. McBean waived any fees and did not submit billing records, that it is "impossible to determine" whether Mr. Tuddenham's billings are excessive.  (Def.'s Objection 11, ECF No. 210). Defendants then go on to argue that 133.7 hours should be deducted from the pre-appeal total due to the categories of objections noted above and that Mr. Tuddenham's remaining hours should be reduced by 30%. (*Id.* at 11-17.) Ultimately, they assert that only 9.2 hours of Mr. Tuddenham's pre-appeal time is reasonable as billed. (ECF No. 221). This argument is unpersuasive.

The court has the ability to compare Mr. Tuddenham's pre-appeal time with the time defendants' counsel expended from 2011 to early 2013 because after this court granted summary judgment in their favor in 2014, defendants filed a motion to recover their reasonable attorneys' fees from Utah Legal Services. In their fee motion, defendants sought fees for 242 hours actually billed to them and half of 423.8 hours that were worked, but not billed, by defendants' counsel. It

is apparent by defendants' fee request that they did not believe all of those hours were "excessive, redundant, or otherwise unnecessary." *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995). Rather, after exercising "billing judgment," *Hensley*, 461 U.S. at 434, defendants' counsel concluded that a total of 453.9 hours was reasonable, necessary, and appropriately charged to Utah Legal Services for time worked on this matter from 2011 to 2013 (242 hours + ½ of 423.8 hours = 453.9 hours). While the difference between the 453.9 hours defendants' counsel expended and the 137.8 hours Mr. Tuddenham seeks from 2010 to April 2014 can be explained in part by Utah Legal Services not billing for its time, there is also evidence that Mr. Tuddenham exercised careful billing judgment and that plaintiff benefitted from the efficiency created by Mr. Tuddenham's expertise.[1] In awarding fees for that time to plaintiff, defendants also benefit from that efficiency and expertise.

For example, Mr. Tuddenham was the attorney responsible for briefing the summary judgment and discovery sanctions motions filed after discovery was completed. He seeks a total of 68.6 hours of time for his work on those matters. By comparison, defendants' counsel sought reimbursement for 163.8 hours briefing those same motions (116.8 billed hours plus ½ of 94 unbilled hours = 163.8 hours). In other words, defendants' counsel reasonably expended considerably more than twice the amount of time that Mr. Tuddenham did briefing the same three motions. It thus appears that Mr. Tuddenham billed efficiently and exercised appropriate billing judgment with respect to the pre-appeal hours he is claiming in this case.

As for defendants' more specific objections to Mr. Tuddenham's pre-appeal time, the court rejects the contention that pre-filing activities must be excluded. The Supreme Court has

---

[1] The court notes that the 590.5 total hours sought by plaintiff for six years of attorney work from case inception to closure is only a little more than one-third higher than the number of hours defendants' attorneys sought for two years of attorney work just through summary judgment. In the court's view, this generally supports both the reasonableness and efficiency of plaintiff's counsel's billing.

previously found that "services performed before a lawsuit is formally commenced by the filing

of a complaint" can be time reasonably expended on a lawsuit. *Webb v. Board of Educ. of Dyer*

*Co., Tenn.*, 471 U.S. 234, 243 (1985). *See also Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir.

1993) (interviewing and drafting the complaint are compensable); *David C. v. Leavitt*, 900 F.

Supp. 1547, 1556-57 (D. Utah 1995) (refusing to find pre-filing hours non-compensable.) Thus,

the court will not exclude pre-filing time.

The court also rejects defendants' allegations that Mr. Tuddenham billed for time

expended on behalf of dismissed plaintiff Ciro Camayo. Mr. Tuddenham's affidavit asserts that

he reviewed and excluded such time, (Tuddenham Aff. 7, ECF No. 202-1), the court's

independent review of his time records shows correctly excluded entries for such time, and

plaintiff has demonstrated the inaccuracy of defendants' allegations to the contrary.[2] (Pl.'s Reply

4, ECF No. 216.)

Defendants similarly argue unsuccessfully that the court should exclude pre-appeal time

Mr. Tuddenham spent on motions and/or issues on which plaintiff failed or which were never

filed. This argument must be viewed in light of *Hensley*, 461 U.S. at 435, which states that

counsel should "recover a fully compensatory fee" when representing a plaintiff who has

obtained excellent results and that "the fee award should not be reduced simply because the

plaintiff failed to prevail on every contention raised in the lawsuit." The question is "whether the

expenditure of counsel's time was reasonable in relation to the success achieved" in the

litigation. *Id.* at 436. Defendants cite *Parrish v. Sollecito*, 280 F. Supp.2d 145 (S.D.N.Y 2003)

---

[2] May 2011 discovery requests "sought information and documents relevant to both Plaintiff's claims and would have been the same if Saenz had been the only plaintiff," while defendant's time records for Nov./Dec. 2011 show that discovery requests about which Mr. Tuddenham responded were directed only to Mr. Saenz. (Pl.'s Reply 4, ECF No. 216.) Similarly, defendants' counsel's own time records demonstrate that settlement discussions on February 1 and 6, 2012 related exclusively to Mr. Saenz because Mr. Camayo "offered to dismiss his claims voluntarily several days before on January 30." (*Id.*; *see* Wolferts Aff.; ECF 115-1 at 14-15.)

and *Case*, 157 F.3d 1243, in support of their argument to reduce fees based on failed motions or opposing successful motions; however, *Parrish* addressed a motion to strike scandalous, immaterial, and impertinent parts of the complaint and was therefore determined not to be in pursuit of the ultimate result achieved, while *Case* addressed standing deficiencies that the court found obvious and about which the billing records failed to segregate. *Id.* Nothing in this case raises those concerns.

Instead, here defendants object to time spent on plaintiff's motion for protective order to limit discovery of his post-employment immigration status. While the motion was unsuccessful because Magistrate Wells gave defendants the opportunity to discover information to develop counterclaims and defenses, the order denying the motion granted plaintiff the right to reopen the issue as a motion in limine prior to trial. (ECF No. 66.) Plaintiff filed that motion prior to trial, (ECF No. 177), defendants did not object, and plaintiff ultimately prevailed. (ECF No. 194.) The court finds that it was reasonable for plaintiff to have pursued the motion and that the time should not be excluded.

Similarly, defendants object to time Mr. Tuddenham spent researching an unfiled motion to compel answers to admissions on June 26-27, 2011. Mr. Tuddenham's records reveal that after performing the research, he instead drafted a second set of admissions as a better way to obtain the needed admission. (ECF No. 202-1, 6/29/11 entry.) It was reasonable for Mr. Tuddenham to change tactics after researching case law; the court expects competent counsel to make litigation decisions informed by reasonable research. The time will not be excluded.

In the same vein, defendants object to the time Mr. Tuddenham spent unsuccessfully moving to amend the complaint to add an FLSA retaliation claim. Defendants had asserted a counterclaim against plaintiff for breach of contract damages. (ECF No. 43.) Plaintiff's counsel

14

had an obligation to reasonably respond to the counterclaim; they believed the counterclaim was a retaliatory attempt to set off contract damages against plaintiff's FLSA damages. (Pl.'s Reply 5; ECF No. 216.) Although plaintiff's motion was initially unsuccessful, it was denied with leave to refile it after summary judgment. (ECF No. 96.) The motion was ultimately rendered moot when defendants dropped their counterclaim, nevertheless, it was both reasonable and necessary for Mr. Tuddenham to make the motion and the time will not be excluded.

Finally, defendants object to compensating Mr. Tuddenham for the time he spent on plaintiff's summary judgment briefing because plaintiff lost the motion. Again, this objection is not consistent with the *Hensley* standard. Plaintiff's opposition to defendant's motion for summary judgment and his own motion for summary judgment were both reasonable and, indeed, vital steps to achieving his ultimate success. Had plaintiff not filed his own cross-motion for summary judgment the Tenth Circuit could not have rendered judgment in his favor. *Mencia v. Allred*, No. 14-4047 (Order of January 21, 2016).[3]

In summary, on the question of awarding fees for failed or unfiled motions that paved the way to a party's ultimate success, the court agrees with the Ninth Circuit, when it said:

> Rare, indeed, is the litigant who doesn't lose some skirmishes on the way to winning the war. Lawsuits usually involve many reasonably disputed issues and a lawyer who takes on only those battles he is certain of winning is probably not serving his client vigorously enough; losing is part of winning. The [defendant] would have us scalpel out attorney's fees for every setback, no matter how temporary, regardless of its relationship to the ultimate disposition of the case. This makes little sense. We hold, instead, that a plaintiff who is unsuccessful at a stage of litigation that was a necessary step to [his] ultimate victory is entitled to attorney's fees even for the unsuccessful stage.

---

[3] Defendants' objection that it is impossible to know whether some of Mr. Tuddenham's time on the opposition brief may have been spent on plaintiff's intentional infliction claim is not well taken because plaintiff did not oppose defendants' motion with respect to that claim.

*Cabrales v. Co. of Los Angeles*, 935 F.2d 1050, 1053 (1991). *See also Air Transport Assn. Canada v. FCC*, 156 F.3d 1334 (D.C. Cir. 1998). Thus, defendants' focus on who won or loss each individual activity, or whether each action taken can be directly traced to a success, is not the proper test. *Hensley* requires that the expenditure of counsel's time be reasonable in relation to the overall success achieved. *Hensley*, 461 U.S. at 436. The time spent on the summary judgment briefing appears entirely reasonable by this test, especially when recalling that plaintiff's counsel spent one-third of the time defendants' attorneys did on summary judgment briefing. The court similarly rejects defendants' objection to Mr. Tuddenham's time preparing for and arguing the summary judgment briefing. It was reasonable for the attorney who wrote the briefs to argue them; and the court does not believe it is appropriate to direct—by way of fee awards—which counsel is most suited to arguing. Furthermore, the time spent in preparation and attendance at summary judgment by defendants and plaintiff was roughly equivalent (10.1 versus 11.4 hours) and does not suggest plaintiff's counsel lacked billing judgment. Accordingly, the court concludes that Mr. Tuddenham's pre-appeal time of 137.8 hours is reasonable without adjustment.

> b.     *Appeal and Post-Appeal Time of Attorney Tuddenham[4] and Attorney Peterson and Firm*

Of Mr. Tuddenham's 202.9 appeal and post-appeal hours, defendants argue that only 10.7 hours are reasonable as billed. (ECF No. 221.) With respect to those 10.7 hours, defendants argue that Mr. Tuddenham reasonably spent only .9 hours while the appeal brief was being drafted—none of which included any of Mr. Tuddenham's actual efforts as the attorney responsible for drafting the briefs—plus one hour reviewing defendant's brief and one hour

---

[4] Defendants argue that Mr. Tuddenham's time on remand should be entirely disallowed because of an irregularity in his pro hac vice status. The court has already resolved this objection by granting him pro hac vice admission *nunc pro tunc* on remand. (ECF No. 213.)

discussing the reply brief with co-counsel. This is not persuasive. The court notes defendants'

calculation that Mr. Tuddenham's actual time spent on appellate briefing was 81.4 hours, and

finds that his expertise and experience on the legal issues involved was likely instrumental in

plaintiff winning the appeal. Because of his "long experience with the laws and regulations

governing DOL's temporary guestworker programs and almost forty-years' experience

representing both foreign and U.S. workers in claims arising under those programs," (Peterson

Aff. 4-5, ECF No. 202-2), Mr. Tuddenham was primarily responsible for research and briefing

during the appeal and after the 10th Circuit's remand, while co-counsel assisted and generally

handled the court appearances. (Tuddenham Aff. 7, ECF No. 202-1.) Defendants further argue

that of Ms. Peterson and her firm's 249.8 post-appeal hours, only 9.6 hours of Ms. Peterson's

time was reasonably spent on the appeal, again, without any credit for work performed assisting

in the preparation of the briefing. Defendants calculate that Ms. Peterson spent a total of 54.7

hours on appellate briefing assistance. Of the 136.1 hours defendants calculate that plaintiff's

counsel combined spent entirely on appellate briefing, defendants count 89.9 hours of total

billing by both attorneys on the original appellate brief, which they claim should be reduced by

two-thirds, and 46.2 hours for the reply brief, which they claim should be reduced by half.

Viewing this time objectively, however, the court does not find it unreasonable for

plaintiff's counsel to have spent the equivalent of just over two full time work weeks on their

appellate brief and just over one work week on their reply brief. Some minor amount of

duplication may be present when two attorneys work together during an appeal, but both Mr.

Tuddenham and Ms. Peterson assert that they exercised billing judgment, culled duplicate time,

and made billing corrections for accuracy. (Tuddenham Aff. 7, ECF No. 202-l; Peterson Aff. 5,

ECF No. 202-2.) The court generally agrees, but because plaintiff's counsel's appellate briefing

billing records would benefit from greater specificity, the court finds it is appropriate to reduce the 136.1 hours spent on briefing by approximately 3% to account for any duplicative work. The lodestar hours for appellate briefing is therefore 53 hours for Ms. Peterson and 79 hours for Mr. Tuddenham.

For reasons similar to those previously discussed regarding oral argument on summary judgment, the court rejects defendants' objection to Mr. Tuddenham's time traveling to, preparing for and arguing the appeal. Again, the court does not believe it should decide through fee awards who is best suited to arguing on appeal. As for the travel time itself, Mr. Tuddenham has already exercised billing judgment by reducing his actual traveling time by fifty percent. *See Anchondo v. Anderson, Crenshaw & Associates, LLC*, 616 F.3d 1098, 1106 (10th Cir. 2010). Furthermore, defendants assert that because Mr. Tuddenham argued for only 7 minutes, ceding half of his time to amicus counsel, his 10.8 hours in preparation should be reduced by half. The court disagrees. The time spent does not appear excessive to the tasks involved in preparing for oral argument, such as reviewing the appellate briefs, re-reading the cases, outlining the issues, and preparing remarks. The time will not be reduced.

Subtracting hours billed for appellate briefing from counsel's appeal and post-appeal time leaves 121.5 hours at issue for Mr. Tuddenham (202.9 – 81.4 = 121.5) and 195.1 hours at issue for Ms. Peterson and her firm (249.8 – 54.7 = 195.1). For the same reasons discussed above, *see supra* p. 13-15, the court declines to exclude any of this time spent on "failed" but reasonable work during the appeal, such as Ms. Peterson filing an *in forma pauperis* petition (which had a reasonable basis) and time billed related to appellate mediation efforts (mediation is required by the Tenth Circuit; preparation for it is reasonable).

The court will reduce Mr. Tuddenham's hours by 2.7 and Ms. Peterson's hours by 5.5 for time spent in resisting ordering the transcript of the summary judgment hearing. The cost of the transcript was $189.90, (Peterson Aff. Ex. B, ECF No. 202-2), and it was not reasonable for counsel to spend 8.2 hours at the rates requested here resisting this expense when plaintiff had initially ordered the transcript only to change positions months later. Furthermore, both parties cited to the transcript in their appellate briefs.[5] (*See, e.g.*, *Mencia v. Allred*, No. 14-4047, Appellant Brief 41, Appellee Brief 20-24.)

Defendants further argue that Ms. Peterson's hours should be reduced by 10.5 for all time spent "assisting amici." (Def.'s Opp. 19, ECF No. 210.) There is no Tenth Circuit precedent directly on point, although plaintiff directs the court to an Oklahoma district court opinion where the court adopted the following "fee-shifting rules regarding time spent in connection with supporting amicus briefs:"

> (1) post-filing activities, such as reviewing an amicus brief for purposes of preparing the party's own brief, preparing for oral argument, or preparing for trial, *are generally compensable*; (2) pre-filing activities *must be carefully scrutinized and are not compensable* if they constitute brainstorming potential amici, strategizing regarding potential amici, coordinating potential amici, soliciting potential amici, or drafting/editing an amicus brief; and (3) pre-filing activities *may be compensable* if they are required by any procedural rules or otherwise deemed necessary and reasonable by the court.

*Bishop v. Smith*, 112 F.Supp.3d 1231 (N.D. Okla. 2015) (emphases added). By applying this guidance, plaintiff argues that 9.6 hours of Ms. Peterson's time is compensable. *Bishop*'s reasoning was a rejection in part of the Eleventh Circuit's opinion in *Glassroth v. Moore*, 347 F.3d 916 (2003), which directed a district court not to "allow the plaintiffs any compensation for

---

[5] Plaintiff's counsel erroneously argues that defendants did not cite to the transcript on appeal. (Pl.'s Reply 8, ECF No. 216.) The court similarly gives no weight to defendant's counsel's argument that plaintiff's counsel's change of mind as to the transcript was a "delay tactic" for the purpose of allowing "time for amici to become involved." (Def.'s Opp. 19, ECF No. 210.)

time their counsel spent in connection with amicus briefs supporting their position," suggesting that "[e]ven where such efforts are successful . . . they should not be underwritten by the other party." *Id.* at 918-19. Defendants do not object to all time spent by counsel on amici-related efforts; thus, *Bishop*'s reasoning seems more applicable than *Glassroth*'s. Upon review of the allegedly noncompensable time, however, the court notes that defendants erroneously impute .7 hours of Mr. Tuddenham's time to Ms. Peterson, and that this time fell into the category of pre-filing activities in support of arranging for amici's participation that the court does not believe defendants should pay for. (Def.'s Opp. Ex. 26, ECF 210-27.) Of the remaining 9.8 hours of Ms. Peterson's time that defendants object to, it appears that 7.9 hours were spent on primarily on updating plaintiff's own appellate brief after receipt and review of amicus briefs and suggested edits. (*Id.*) *Bishop* suggests that "[s]upporting amicus briefs often raise new arguments or policy considerations," and that the type of work Ms. Peterson engaged in here is not necessarily conducted "in connection with supporting amicus briefs." *Bishop*, 112 F.Supp.3d at 1246. The court agrees. Of the 10.5 hours defendants object to, the court will exclude .7 hours of Mr. Tuddenham's time, but only 1.1 hours of Ms. Peterson's time because it appears to have been done in support of amici's efforts, whereas Ms. Peterson's remaining 7.9 hours appear primarily directed toward plaintiff's own briefing.

A number of defendants' objections focus on entries by Ms. Peterson that they consider noncompensable as administrative, secretarial, or similarly questionable. At the outset, the court finds that preparing, proofreading, and finalizing appellate briefs, indexes, and bookmarks is compensable and requires legal knowledge and judgment. Ms. Peterson and her firm do not employ a paralegal; when such legal work is performed by an attorney, it is compensable at an attorney rate. Similarly, work involved in seeking extensions and stipulations is also legal work,

and where it is performed by attorneys—here counsel for both parties participated in these activities—it is compensable at an attorney rate. Besides these activities, defendants object to approximately 22.9 hours of Ms. Peterson's time spent performing legal work that allegedly could be performed by a paralegal. (Def.'s Opp. Ex. 30, 33, 34.) Again, because Ms. Peterson and her firm do not employ a paralegal and the legal activities must be performed, it is appropriate for an attorney to perform them and be compensated at an attorney rate. After review of the individual entries, it appears that some small amount of tasks are purely secretarial rather than legal. The court deducts 10% (2.3 hours) from the 22.9 hours of Ms. Peterson's time defendants objected to in order to account for secretarial work.

After these deductions, Mr. Tuddenham's appeal and post-appeal time stands at 118.1 hours and Ms. Peterson and her firm's time stands at 186.2 hours, of which 175.7 hours are Ms. Peterson's alone. Defendants' remaining objections to the hours spent can be broadly categorized as complaints that time billed was excessive or not reasonably expended. Plaintiff points out, and the court agrees, that a number of defendants' objections reflect misreadings and in some cases misrepresentations about plaintiff's billing records.[6] The court will not deduct time for these objections. Additionally, the court notes that many of defendants' objections are hypercritical and speculative, and in most cases, not supported by precedent or legal justification to support the unreasonableness of the exclusions they request.[7]

---

[6] For example, defendants claim that Mr. Tuddenham's time entry for 7/8/11 is vague and should be excluded because it says "status" when in fact the time entry reads "finalize reply brief protective order re: immigration status." Defendants characterize several entries as excessive for reviewing discovery requests and discovery responses, when those entries actually reflect time not just in review but in legal analysis involved in properly responding to and redrafting discovery requests and responses and in strategic legal decisions on discovery tasks. (Pl.'s Reply 13; ECF 216.)

[7] The court is not persuaded by defendants' arguments regarding deductions for time spent on the attorney's fee request, *see Case*, 157 F.3d at 1254; time Ms. Peterson spent communicating with her client that defendants speculate could not have occurred due to the language barrier (Ms. Peterson asserts

For example, research, briefing, and preparation for oral argument on plaintiff's damages was time reasonably incurred; the damages issues was more complex than appeared on first review. The court also will not deduct time for Mr. Tuddenham's research about final judgments and Rule 54; the research was done within days of the court issuing its summary judgment decision while counsel was contemplating an appeal, and the court will not penalize counsel for researching the current state of the legal authorities and their application to the procedural posture of the case. Such research at critical junctures can often save clients unnecessary expense and the court unnecessary judicial resources. The court declines to exclude time related to the issue of whether and what amounts defendants paid for plaintiff's housing, food, transportation, etc. could be offset from their minimum wage liability. Defendants assert that plaintiff lost this issue and that no time should be awarded; in fact, this issue was never decided because the case settled. Under the *Hensley* standard, it was reasonable for defendants to respond to two rounds of briefing ordered by the court on the legal standards governing offsets (as well as the proper method of calculating damages and election of remedies). It was also reasonable for plaintiff to draft legally correct jury instructions on offsets and argue why some of defendants' offset claims were invalid and failed to meet the standards of the FLSA.

Furthermore, defendants object to plaintiff's counsel's trial preparation time because it "accelerated quickly after settlement was raised" on October 3. (Def.'s Opp. 25, ECF No. 210.) Trial was set for October 14 (briefly postponed to October 24 by order of October 11 at defendant's counsel's request). (ECF Nos. 170, 193.) In light of that rapidly approaching date

---

that they used Google Translate for some communications when an interpreter was not available) (Pl.'s Reply 16, ECF No. 216); or time spent by counsel working on the settlement, which the courts finds was reasonably expended. Similarly the Tenth Circuit has not "established a rule mandating reduction or denial of a fee request if the prevailing party submits attorney records which reflect block billing." *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (2003). Here, the records sufficiently allow the court to determine the time allotted to the various tasks and the reasonableness of that time. The court is also not persuaded by defendants' objections of vague billing or billing to "correct errors."

and the consequent deadlines imposed by the court, it would have been malpractice for plaintiff's counsel not to prepare simply because defendant requested a settlement demand, particularly in light of the history of this case. Thus, trial preparation did not accelerate because settlement was raised, but because trial was imminent. From review of the records, trial preparations ceased immediately on October 21 when defendants accepted plaintiff's demand.

Defendants accept as reasonable only 1.4 hours of Mr. Tuddenham's time for trial preparation work because he was not planning on attending trial. This decision by plaintiff's counsel was reasonable because Ms. Peterson is an experienced employment law litigator fully capable of conducting the trial without duplication in Mr. Tuddenham's attendance. But because Ms. Peterson had other obligations in separate matters leading up to trial, and because Mr. Tuddenham has "extensive experience as an expert litigating cases arising under the FLSA and H-2A temporary guestworker programs on behalf of foreign visa workers," she acknowledges she relied on him for trial preparations. (Peterson Aff. 4-5, ECF No. 202-2.) Mr. Tuddenham substantively performed or directed much of the trial preparations, such as selection of witnesses and exhibits, researching and preparing jury instructions, drafting and responding to motions in limine, drafting voir dire, preparing outlines for direct and cross examination, and generally directing trial strategy. (*See* Def.'s Supp., ECF No. 221.) The court does not find this unreasonable. The division of labor between general and specialized counsel streamlined much of the work involved in trial preparation and enabled the attorney who could perform the task in the most efficient amount of time to take the lead on that task.

Defendants also claim that plaintiff's counsel spent an excessive amount of time on jury instructions, that this time was unnecessary because the court has stock instructions, and that this work should be done by the "lowest junior attorney." (Def.'s Brief 26, ECF No. 210.) This

objection is not well taken. First, the research was done at a critical time in the preparation of the case. In the court's experience, if there is a criticism to be directed at attorneys for inadequate trial preparation, it is that they spend too little time researching and drafting jury instructions. The care spent by attorneys to understand existing precedent, conceptualize their legal theory in the context of the facts the evidence will support, and prepare well-crafted jury instructions and special verdict forms is of great value to the client and to the court. Counsel should be rewarded for such care, not penalized. Moreover, the time spent is consistent with the time required based on the court's own experience in practice and in the time spent by the court and its staff to address these same issues in this case.

With respect to defendants' objections as to duplication of attorney efforts, the Tenth Circuit directs district courts to consider this issue and "examine the potential duplication of services." *Ramos*, 713 F.2d at 554. Because Ms. Peterson intended to act as trial counsel, she states that she and Mr. Tuddenham "split the work amongst us as it regards trial preparation," that there was no "unnecessary duplication of effort" and that she and Mr. Tuddenham largely coordinated their efforts via e-mail and conference calling, which were typically billed by only one of them. (*Id.*; Plaintiff's Brief 7, ECF No. 202.)  The Tenth Circuit has also recognized that conferencing between co-counsel in a case is compensable. *Anchondo*, 616 F.3d at 1105. The court has reviewed the time spent by the plaintiff's counsel in light of their affidavits identifying their division of labor. From the billing entries it appears that the assignments were appropriate and the work reasonably related to the claims and defenses, although some minor duplication of effort may have been inevitable.

With respect to Ms. Peterson's firm members Ms. Peck and Mr. Peterson, the court also notes that communication between co-counsel is necessary to coordinate the work and is often

strategic and that conceptual discussions about the theory of the case, the evaluation of the strength of the evidence, and additional research and briefing necessary to advance the claims may be the most effective and valuable time spent on behalf of the client or to assist in communicating with the client. In the case of Mr. Peterson's communications with the client, the court notes that entries for Spanish interpretation only have been excluded; the court is not persuaded by defendants' assertion that his time reviewing the briefing and assisting Mr. Saenz with trial preparation was not necessary or not legal work. Ms. Peterson nevertheless acknowledges that there was some "overlap of attorney time [with Mr. Peterson] when they were preparing Plaintiff for his examination at trial, which necessitated the involvement of both counsel."

The court must rely upon its own experience, familiarity with the facts and complexity of the case, and review of the time entries submitted in support to determine the necessity of the hours billed. Based on these factors, the court has determined that Mr. Tuddenham's remaining 118.1 hours should be reduced by 5%, that Ms. Peck's (4.4 hours) and Mr. Peterson's (6.1 hours) time should not be reduced but that Ms. Peterson's remaining time (175.7 hours) should also be reduced by 5% to account for any unnecessary duplication, excessive, or not reasonably expended time. This results in 112.2 hours for Mr. Tuddenham and 177.4 hours for Ms. Peck and her firm (166.9 + 4.4 + 6.1 = 177.4 ) at the rates noted above.

## C. Costs

Mr. Tuddenham seeks costs of $1,463.40, while Ms. Peterson and her firm seek costs of $532.69. (Tuddenham Aff. Ex. C, ECF No. 202-1; Peterson Aff. Ex. B, ECF No. 202-2.) Defendants argue that the sum of $1,148.20, representing Mr. Tuddenham's costs for traveling to participate in both the summary judgment hearing and the 10th Circuit oral argument, should be

disallowed. (Def.'s Opp. 11, ECF No. 210.) Travel costs for out-of-town counsel should be reimbursed where there is a showing that the use of out-of-town counsel was necessary. *Ramos*, 713 F.2d at 559. Defendants do not argue that Mr. Tuddenham's expertise was not necessary, merely that Mr. McBean or Ms. Peterson could have argued the summary judgment and appeal, notwithstanding that Mr. Tuddenham wrote the briefs and is the acknowledged subject-matter expert in this litigation. Having already decided that the court will not direct which counsel should argue by way of fee awards, the court finds that Mr. Tuddenham's travel costs are reimbursable.  Defendants also allege they should not be required to pay $189.80 for the summary judgment transcript plaintiff was required to order during the appeal. Having disallowed attorney's fees for the dispute over this transcript, the court finds that it is appropriate for defendants to pay the actual cost of the transcript.

Upon submission of court-ordered spreadsheets of billing objections, defendants also argue for the first time that none of plaintiff's costs are allowed by Tenth Circuit statute or rule because they are not supported by attached receipts.  (Def.'s Supp. Ex. A, ECF No. 221.) Not only are defendants' objections untimely, they are incorrect.  Costs are awarded in this action pursuant to 29 U.S.C. § 216(b), which allows "a reasonable attorney's fee to be paid by the defendant, and costs of the action." There is no requirement for receipts. Furthermore, the statute cited by defendants, 28 U.S.C. § 1924, applies to verification for bills of costs, not to motions for attorney's fees. Even then, that statute does not require attached receipts, but that "the party claiming any item of cost or disbursement shall attach thereto an affidavit . . . that such item is correct and has been necessarily incurred in the case." *Id.* Mr. Tuddenham's and Ms. Peterson's affidavits meet this requirement in any event. The court awards these costs in full.

## II.    AWARD OF FEES AND COSTS

Having reviewed the pleadings related to plaintiff's motion for attorney fees, the supporting evidence, the detailed billing records and spreadsheets, and having considered the defendants' numerous objections and arguments, the court finds that with the adjustments discussed above the requested fees and costs were reasonably and necessary expended. The court concludes that Mr. Tuddenham should be awarded 137.8 hours for pre-appeal work, 79 hours for appellate briefing, and 112.2 hours for all other work in this matter, which equals 329 hours at a rate of $450 per hour for a total of $148,050 in attorney fees, plus costs of $1,463.40.  Ms. Peterson and her firm should be awarded 53 hours for appellate briefing and 166.9 hours for Ms. Peterson's time at a rate of $250 per hour, 4.4 hours of Ms. Peck's time at $300 per hour, and 6.1 hours of Mr. Peterson's time at $220 per hour for a total of $57,637 in attorney fees, plus costs of $532.69.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Attorney Fees (ECF No. 202) is GRANTED, and plaintiff is awarded $204,683.09 as attorney fees and costs.

DATED this 6th day of October, 2017.

BY THE COURT:

_Clark Waddoups_

Clark Waddoups
United States District Judge